1

2

3

4

5

6

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

7

8    COUNTRY STEVENS,                    )        3:09-cv-00227-RCJ (WGC)
                                         )
              Plaintiff,                 )        **REPORT AND RECOMMENDATION**
9                                        )        **OF U.S. MAGISTRATE JUDGE**
        vs.                              )
10                                       )
      HOWARD SKOLNIK, et al.,            )
11                                       )
              Defendants.                )
12    _____)

13         This Report and Recommendation is made to the Honorable Robert C. Jones, Chief

14   United States District Judge. The action was referred to the undersigned Magistrate Judge

15   pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4. Before the

16   court is Defendants' Motion to Dismiss. (Doc. #104.)[1] Plaintiff has opposed (Doc. #110)[2], and

17   Defendants have replied (Doc. # 113). Also before the court is Plaintiff's Motion for Summary

18   Judgment. (Doc. # 111.)[3] After a thorough review, the court recommends that Defendants'

19   motion (Doc. # 104) be granted in part and denied in part, as set forth herein. It is further

20   recommended that Plaintiff's motion (Doc. # 111) be denied.

21                                    **I. BACKGROUND**

22         Plaintiff Country Stevens (Plaintiff), a *pro se* litigant in custody of the Nevada

23   _____

24         [1] Refers to court's docket number.  Pursuant to the court's order (Doc. # 121), Defendants' filed a
     supplement to their motion (Doc. # 122).

25         [2] Plaintiff titles his response, "Opposition to Defendants' Motion to Dismiss and Motion for Summary
26   Judgment," and the Clerk filed this document as Plaintiff's Opposition to Defendants' Motion to Dismiss (Doc.
     # 110) and Plaintiff's Motion for Summary Judgment (Doc. # 111).  The documents are identical.

27         [3] While the court previously stayed briefing on Plaintiff's Motion for Summary Judgment (*see* Doc. # 119),
28   upon further review of Plaintiff's motion the court has determined Plaintiff has not met his burden, and
     recommends denial of the motion.

Department of Corrections (NDOC), brings this action pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 2000cc, *et. seq.*, the Religious Land Use and Institutionalized Persons Act (RLUIPA), and the Nevada Constitution based on the confiscation of his religious materials and interference with his ability to practice his religious beliefs. (Pl.'s Compl. (Doc. # 8) at 5, 24, 32.)[4] At all relevant times, Plaintiff has been housed at either Lovelock Correctional Center (LCC) or Northern Nevada Correctional Center (NNCC). (*Id.* at 1.)  Defendants are Howard Skolnik, Donald Helling, Jim Benedetti, Tony Corda, Senior Correctional Officer Bauman, Lieutenant Olivas, Sergeant Lewis, and Senior Correctional Officer Hicks. (*Id.* at 2-4.) Plaintiff seeks declaratory relief, injunctive relief, compensatory damages, and punitive damages. (*Id.* at 35-37.)

The factual bases for Plaintiff's remaining claims are as follows: (1) participation in Native American ceremonies (Doc. # 8 at 6); (2) possession of items of religious property (*id.* at 6-7, 10-11, 13-15, 26); (3) prayer (*id.* at 7, 14, 25); (4) racial and religious discrimination (*id.* at 7, 15, 24, 32); (5) preparation and adequacy of ceremonial meals (*id.* at 10-11, 13-14); (6) wearing religious headgear (*id.* at 10); (7) burning herbs in an individual setting (*id.* at 11, 13); (8) use of religious grounds (*id.* at 12, 20); (9) ability to order religious books, papers, and music (*id.* at 14); and (10) the conduct of Senior Correctional Officer James Bauman (*id.* at 5, 24, 32).

Defendants now move to dismiss Plaintiff's Complaint for failure to exhaust available administrative remedies. (Doc. # 104.) Plaintiff opposed (Doc. # 110) and also moved for summary judgment (Doc. # 111).

## II.  LEGAL STANDARD-UNENUMERATED 12(b) MOTION TO DISMISS

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined

---

[4] Plaintiff's claim that Defendants violated 28 U.S.C. § 994 was dismissed with prejudice. (*See* Doc. # 60 and Doc. # 71.) In addition, the court found Plaintiff's claims arising prior to April 29, 2007, are barred under the applicable two-year statute of limitations. (*Id.*)

in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). An inmate must exhaust his administrative remedies irrespective of the forms of relief sought and offered through administrative avenues. *Booth v. Churner*, 532 U.S. 731, 741 (2001). The Supreme Court recently clarified that exhaustion cannot be satisfied by filing an untimely or otherwise procedurally infirm grievance, but rather, the PLRA requires "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). "Proper exhaustion" refers to "using all steps the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Id.* (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original).

This court has interpreted Justice Alito's majority opinion in *Woodford* as setting forth two tests for "proper exhaustion": (1) the "merits test," satisfied when a plaintiff's grievance is fully addressed on the merits by the administrative agency and appealed through all the agency's levels, and (2) the "compliance test," satisfied when a plaintiff complies with all critical procedural rules and deadlines. *Jones v. Stewart*, 457 F. Supp. 2d 1131, 1134 (D. Nev. 2006). "A finding that a plaintiff has met either test is sufficient for a finding of 'proper exhaustion'. Defendants must show that Plaintiff failed to meet both the merits and compliance tests to succeed in a motion to dismiss for failure to exhaust administrative remedies." *Id.*

The failure to exhaust administrative remedies is treated as a matter in abatement and is properly raised in an unenumerated Rule 12(b) motion. *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir.2003). Failure to exhaust administrative remedies is an affirmative defense, and defendants bear the burden of raising and proving failure to exhaust. *Id.* A court, in deciding a motion to dismiss based on exhaustion, may look beyond the pleadings and decide disputed issues of fact without converting the motion into one for summary judgment. *Id.* (citing *Ritza v. Int'l Longshoremen's & Warehousemen's Union*, 837 F.2d 365, 368 (9th Cir. 1988) (per curiam)). If a court concludes that the prisoner bringing a suit has failed to exhaust nonjudicial remedies, "the proper remedy is dismissal of the claim

3

1    without prejudice." *Id.* at 1120.

2          During the time period in question, for prisoners within the NDOC system,

3    exhaustion of administrative remedies required compliance with the inmate grievance

4    procedure set forth in NDOC Administrative Regulation (AR) 740.[5] (Doc. # 104-2 (Ex. A) at

5    ¶ 7; Doc. # 104-2 (Ex. B) at 5.) The administrative process consisted of: (1) an informal

6    level grievance; (2) a first level formal written grievance appealing the informal grievance

7    decision; and (3) a second level grievance appealing the first level grievance decision. (Doc.

8    # 104-2 (Ex. B) at 14.)[6] AR 740 further provides that all documentation and factual

9    allegations available to the inmate are to be submitted at the informal level. (Doc. # 104-2

10   (Ex. B) at 18.)

11         In addition to using the grievance system, Plaintiff was required to comply with the

12   procedures set forth in AR 810 and the NDOC Religious Practice Manual in connection with

13   a request to add religious property or to request new or additional religious

14   accommodations.  (Doc. # 104 at 5, Doc. # 104-3 (Ex. C) at 2-4, 15-20.)

15         **III.  DISCUSSION-UNENUMERATED 12(b) MOTION TO DISMISS**

16   **A. Evidentiary Issues**

17         In support of their motion, Defendants initially filed reports from NDOC's electronic

18   record keeping system, the Nevada Offender Tracking and Information System (NOTIS),

19   consisting of a log and *summary* of all grievances filed by Plaintiff from February 13, 2007

20   through March 14, 2011. (*See* Doc. 104-3 (Ex. D) at 52-54; Doc. # 104-4 (Ex. E) at 2-35.) The

21   only actual grievance documents Defendants filed are those related to grievance numbers

22   2006-27-11753 and 2006-27-86530 (*see* Doc. # 104-4 (Ex. E) at 2-35; Doc. # 140-4 (Ex. F) at

23   37-47; Doc. # 104-5 (Ex. G) at 2-45), and those were not properly authenticated.

24

25        [5] AR 740 has since been revised.  The version of AR 740 relied upon by Defendants was effective January
26   5, 2004 through November 23, 2009.  (Doc. # 104-1 (Ex. A) at ¶ 7; Doc. # 104-1 (Ex. B).)

27        [6] Unless otherwise specified, all references to page numbers in the record refer to the court docket page
     numbers.

28                                             4

On November 8, 2011, the court ordered that Defendants file a supplement to their motion on or before November 15, 2011, to include the following: (1) properly authenticated documentary evidence related to grievance numbers 2006-27-11753 and 2006-27-86540; and (2) properly authenticated grievance documents, for each level of review, along with all prison responses, for every other grievance relied upon in support of Defendants' Motion to Dismiss. (*See* Doc. # 21.)

In compliance with the court's order, Defendants submitted evidence supplementing their motion, consisting of hundreds of pages of documents. (Doc. # 122.) To the extent that the court's November 8, 2011 order may have created some confusion, the court takes this opportunity to further clarify and explain its concern with the Defendants' filing only the NOTIS report, and not the actual grievance documentation, in an attempt to circumvent the filing of thousands of pages of documentation in the future. As counsel for Defendants is aware, the court has recently raised various evidentiary issues with respect to the filing of an unenumerated 12(b) motion to dismiss, which include apparent discrepancies between the grievance summaries in the NOTIS report and the information contained within the actual grievance filed by the inmate, and the failure to authenticate evidence filed in support of these motions.

While the NOTIS summary of grievances is helpful, and the court does not discourage Defendants from filing these reports, the summary should only serve to supplement the actual documents that form the basis of the affirmative defense. Therefore, if a defendant is referring to a specific grievance or grievances to support an unenumerated 12(b) motion, the relevant grievance documentation, and not simply the NOTIS report, should be filed in support of the motion. If, on the other hand, the defendants are claiming that *none* of the thousands of pages of documents contained within the inmate's grievance file make reference to the claims the inmate is asserting in the lawsuit, the defendant need not provide the court with every single document in the inmate's grievance file, as has been done in this instance. Instead, it is sufficient for the defendant to provide a declaration, under penalty of perjury, by a person who

has reviewed the actual *grievance file* for the relevant time period (and not simply the NOTIS report), certifying that the grievance documentation reviewed makes no reference to the constitutional claim at issue.

In this case, for example, Defendants should have initially provided the *authenticated* grievance documentation for the grievances that are actually at issue, numbers 2006-27-11753 and 2006-27-86540. In addition, because Defendants claim that none of the other grievances filed by Plaintiff during the relevant time period relate to the constitutional claim at issue, it would have been sufficient for Defendants to present a declaration as described above. Instead, as noted above, Defendants filed a voluminous binder of all of Plaintiff's grievances. (Doc. # 122.) This required the court to undertake a time consuming, page-by-page review of hundreds of pages of grievances. The court wishes to avoid repetition of this scenario in the future by requesting the Office of the Attorney General to adopt the "grievance review" procedures the court has proposed.

Finally, if there is any confusion with respect to this issue in this case, or any other case, counsel is encouraged to file a brief motion requesting a telephonic status conference, and the court will do its best to accommodate the parties in an expeditious fashion.

With proper evidence before it, the court will now address the merits of Defendants' motion.

**B. Analysis**

**1. Defendants did not waive their right to raise the exhaustion defense**

Plaintiff argues Defendants waived their right to raise the exhaustion defense. (*See* Doc. # 110 at 2.) The court finds this argument has no merit.

The failure to exhaust administrative remedies is properly treated as a matter in abatement raised in an unenumerated 12(b) motion. *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003). It is an affirmative defense that Defendants bear the burden of raising and proving, *id.*, and Defendants are correct that the PLRA does not contain a temporal requirement for raising the defense. Defendants preserved the defense by raising it in their

6

1  Answer. (Doc. # 73 at 19.)

2  **2. Grievances at Issue**

3  Plaintiff filed twenty (20) grievances at the informal level since February 13, 2007.

4  (Doc. # 104 at 6; Doc. 104-3 (Ex. D) at 52-54; Doc. # 104-4 (Ex. E) at 2-35.)[7] For twelve (12)

5  of these, he completed the grievance process through the second level, as required under AR

6  740**.** (Doc. # 104 at 6; Doc. # 104-4 (Ex. E) at 4, 5, 7, 9, 11,13, 15, 20,24, 28, 33, 35; Doc. # 122

7  Attachments 1-4.)[8]  Of these twelve (12), five (5) were not completed at the second level until

8  *after* the filing of Plaintiff's Complaint. (Doc. # 104 at 7; Doc. # 104-3 (Ex. E) at 4, 5, 7, 9, 11;

9  Doc. # 122-2, Doc. # 122-3, Doc. # 122-4, Doc. # 122-5, Doc. # 122-6, Doc. # 122-7, Doc. # 122-

10  8 (Attachment 3).)[9]

11  Defendants are correct that the PLRA requires exhaustion *prior* to the initiation of the

12  lawsuit. *See McKinney v. Carey*, 311 F.3d 1198, 1199-1201 (9th Cir.  2002) (per curiam)

13  (exhaustion requirement does not permit prisoner to file complaint addressing non-exhausted

14  claims even if he exhausts while case is pending); *see also Vaden v.  Summerhill*, 449 F.3d

15  1047, 1050-51 (9th Cir.  2006) ("The bottom line is that a prisoner must pursue the prison

16  administrative process as the first and primary forum for redress of grievances.  He may initiate

17  litigation in federal court only after the administrative process ends and leaves his grievances

18  unredressed.  It would be inconsistent with the objectives of the statute to let him submit his

19  complaint any earlier than that."). Allowing Plaintiff to proceed with claims without having

20

21  [7] As explained by Defendants, the grievances currently relevant to this lawsuit are those dating back to February 13, 2007.  (Doc. # 104 at n.  4.)  The court dismissed all claims arising prior to April 29, 2007, as barred

22  by the statute of limitations, and AR 740 provides that the total time allowed from initial submission of an

23  informal level grievance to the last level of procedural review should not exceed seventy-five (75) days. The statute of limitations is stayed while grievances are pending, and therefore, the start date of the time period during which

24  Plaintiff could have filed grievances on issues not barred by the statute of limitations is February 13, 2007.

25  [8] Grievance numbers 2006-29-02914, 2006-29-01260, 2006-29-01254, 2006-28-95156, 2006-28-93700,

26  2006-28-82835, 2006-28-81214, 2006-27-86530, 2006-27-11753, 2006-27-10588, 2006-26-51232, and 2006-26, 23487.

27  [9] Grievance numbers 2006-29-02914, 2006-29-01260, 2006-29-01254, 2006-28-95156, and 2006-28-93700.

28

1   exhausted prior to filing his Complaint would create an end-run around the PLRA, *McKinney*

2   and *Vaden*. Therefore, the claims contained in grievances responded to at the second level after

3   April 29, 2007 (grievance numbers 2006-29-02914, 2006-29-01260, 2006-29-01254, 2006-

4   28-95156, and 2006-28-93700), were not properly exhausted.

5         Defendants claim that of the remaining seven (7) grievances[10], only two (2) address the

6   religious rights issues of which Plaintiff complains in his lawsuit: grievance numbers 2006-27-

7   11753 and 2006-27-86530. (Doc. # 104 at 7; Doc. 104-3 (Ex. D) at 52-54; Doc. # 104-4 (Ex.

8   E) at 2-35; Doc. # 122-2-Doc.# 122-9 (Attachments 3-4).) A review of the grievance

9   documentation provided with respect to these other grievance numbers confirms Defendants'

10   contention: 2006-28-82835 (issues with the toilet), 2006-28-81214 (claim of discrimination

11   against those in wheelchairs), 2006-27-10588 (delay in getting medications), 2006-26-51232

12   (denial of medical treatment), and 2006-26-23487 (unauthorized typewriter). (Doc. # 122-2-

13   Doc.# 122-9 (Attachments 3-4).) These grievances are unrelated to the allegations of Plaintiff's

14   action.

15         The court will now determine whether Plaintiff has exhausted his administrative

16   remedies with respect to the two grievances which raise religious rights issues; grievance

17   numbers 2006-27-11753 and 2006-27-86530.

18       **3. Grievance number 2006-27-11753**

19           **a. Informal level**

20         Plaintiff filed an informal level grievance on April 15, 2008, stating that his religious

21   rights were violated when he requested approval from Correctional Officer Hicks to purchase

22   religious items, as well as approval for hobby craft and received no response. (Doc. # 122-1 at

23   6-8.) He further claims that he spoke with caseworker Paul Hocksprung on April 14, 2008, and

24   asked him to contact Mr. Hicks, so that he could file a grievance, to no avail. (*Id*.) The informal

25   level grievance was denied on May 14, 2008. (*Id*. at 5.)

26

27         [10] Grievance numbers 2006-28-82835, 2006-28-81214, 2006-27-86530, 2006-27-11753, 2006-27-10588, 2006-26-51232, and 2006-26-23487.

28

### b.  First level

Plaintiff filed a first level grievance on June, 3, 2008, stating that he disagrees with the response to his informal level grievance and the continued denial of his rights under the First and Fourteenth Amendments. (Doc. # 122-1 at 10-11.) The prison responded on July 11, 2008, attaching a copy of AR 810, instructing Plaintiff to refer to the requirements for participating in Native American activities. (*Id.*  at 9.)[11]

### c.  Second level

Plaintiff filed his second level grievance on July 30, 2008, stating that AR 810 violates his First and Fourteenth Amendment rights, as well as RLUIPA. (Doc. # 122-1 at 13-15.) He goes on to state that he has the right to individually practice his religion, and the right to spiritual items. (*Id.*) The grievance was denied on August 6, 2008. (*Id.*  at 12.)

### 4. Grievance number 2006-27-86530

### a.  Informal level

Plaintiff filed a twenty-seven (27) page informal level grievance on October 1, 2008. (Doc. # 122-1 at 21-51.) Plaintiff asserted that he was placed in administrative segregation on August 19, 2008, and NDOC Senior Correctional Officer Alexander and Correctional Officer Estes inventoried his property.  He alleges that when his property was returned on August 21, 2008, he discovered items were broken and missing. (*Id.*) Plaintiff further stated that the property inventory list was falsified, and that Sergeant Lewis helped Alexander and Estates cover up their conduct.  (*Id.*) Plaintiff claimed their conduct was motivated by their prejudice against Plaintiff's religion.  (*Id.*)

The prison denied the informal level grievance, stating that Plaintiff failed to note any discrepancies when he received his property inventory list. (Doc. # 122-1 at 20.)

### b.  First level

Plaintiff filed his first level grievance on November 10, 2008, disagreeing with the

---

[11] The requirements of AR 810 and the Religious Practice Manual are set forth herein.  *See, infra*, at 10.

informal level response. (Doc. # 122-1 at 53-58.) Plaintiff asserted that the response was inadequate because he noted the discrepancies in the inventory list to correctional staff. (*Id*.)

The prison upheld the informal level response. (Doc. # 122-1 at 52.)

### c. Second level

Plaintiff submitted his second level grievance on December 5, 2008. (Doc. # 122-1 at 60-63.) Plaintiff stated that Jim Benedetti's response was unacceptable, and that Don Helling failed to act upon the religious issues Plaintiff previously grieved.  (*Id*.)

The determination was again upheld, and Plaintiff's grievance denied on January 12, 2009. (Doc. # 122-1 at 59.)

### 5. Applicability of AR 810

First, Plaintiff argues that the NDOC Request for Accommodation of Religious Practices form either did not exist or was not used until October 2009, and the PLRA does not require exhaustion of remedies that do not exist. (Doc. # 110 at 2.)

 The PLRA requires that an inmate exhaust "such administrative remedies as are available[.]" 42 U.S.C. § 1997e(a).  Courts have interpreted this to require "proper exhaustion," *see Woodford*, 548 U.S. at 93, which means "using all steps the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Id*. (citations omitted).

AR 810, effective July 8, 2008, governs religious faith group activities and programs within NDOC. (Doc. # 104-3 (Ex.  C) at 2.) AR 810.02.2 provides that religious activities are established in the NDOC Religious Practice Manual. (*Id*. at 3.) Section 10 of the Religious Practice Manual governs inmate requests related to the practice of religion, which fall into five (5) categories: (1) requests for recognition of a new religion; (2) requests for new religious property; (3) requests for new or additional services; (4) requests for special holiday service; or (5) requests for food at chapel and/or earth-based religious celebrations. (*Id*.  at 15.)

When an inmate seeks new religious property, the inmate must make a written request to the chaplain, and the chaplain will meet with the inmate and, when deemed necessary, will provide the inmate with a Request for Accommodation of Religious Practice Form, which must

then be returned to the chaplain. (Doc. # 104-3 at 16.) The request is reviewed by the Religious Review Team (RRT) (consisting of the warden, chaplain, and deputy attorney general). (*Id.* at 16-17.) In the event the request is denied, the inmate must be notified in writing of the decision and reason for denial, and a copy of the denial is maintained in the inmate's Institutional File (I-file) which is maintained by the prison. (*Id.* at 17.)

To request a new or additional religious service, the inmate must make a written request for consideration by the chaplain. (Doc. # 104-3 at 17-18.)

AR 810 became effective *July 8, 2008*, and Plaintiff filed his complaint on *April 29, 2009*. (*See* Doc. # 104-3, Doc. # 1.) Plaintiff 's contention that the NDOC Request for Accommodation of Religious Practices form either did not exist or was not used until October 2009 (Doc. # 110 at 2) is belied by the fact that the form is attached to the regulation which became effective July 8, 2008, and Plaintiff was advised to utilize the form in response to his grievances. (*See* Doc. # 113 at 4, Doc. # 104-3 at 2, 31, 46.) Therefore, the court finds Plaintiff was required to comply with AR 810 prior to filing his Complaint with respect to requests for religious property or requests for new or additional religious services.

Next, Plaintiff argues that he was trying to have his religious needs met through Chaplin "Jane" in 2008, but she retired and was not replaced until July 2009. (Doc. # 110 at 2.) This does not explain his failure to comply with the procedures outlined in AR 810. The NDOC Religious Practice Manual requires any request for new religious property or for a new or additional religious service  be made *in writing* via inmate correspondence to the chaplain. (Doc. # 104-3 at 16-17.)

Defendants filed the declaration of NNCC Chaplain W. Gregory Hummel, who reviewed the file designated for storing Request for Accommodation of Religious Practices Forms submitted by inmates, and found no submissions by Plaintiff. (Doc. # 104-5 at 61-62 (Ex. L).) Defendants also filed the declaration of Melanie McBroom (Doc. # 104-5 at 47-48 (Ex. H)), who reviewed Plaintiff's I-file, and located one (1) NDOC Religious Property Request Form dated August 26, 2008, but it did not contain a Request for Accommodation of Religious

11

Practices Form.  (Doc. # 104-5 at 47-48, Doc. # 104-5 at 50-51 (Ex.  I).)

The court will now address Plaintiff's compliance with AR 810 and whether he properly completed the grievance process with respect to his particular claims.

### 6.  Exhaustion of Particular Claims

#### a.  Participation in Native American ceremonies

Plaintiff claims that he is precluded from participating in numerous Native American ceremonies, including the following: pipe; sweat lodge; smudge; midwinter; dead feast; tobacco; maple tree; thunder dance; medicine mask; seed planting; strawberry; raspberry; beans; green corn; harvest; and end of season ceremonies. (Doc. # 8 at 6.)

The declarations of Chaplain Hummel and Ms. McBroom demonstrate that Plaintiff failed to comply with AR 810 and the Religious Practices Manual prior to filing his Complaint with respect to this claim. (*See* Doc. # 104-5 at 47-48 (Ex.  H), 61-62 (Ex.  L).)

In addition, Defendants are correct that Plaintiff failed to grieve this issue. While Plaintiff uses the word "ceremony" in the first page of his informal level grievance for grievance number 2006-27-11753, he makes no mention of being denied the ability to participate in Native American ceremonies. (Doc. # 122-1 at 6-8.) The gravamen of that grievance is the denial of Plaintiff's request for religious property and hobby craft, and his ability to grieve this issue. (*Id*.) Likewise, grievance number 2006-27-86530 focuses on the confiscation of Plaintiff's religious items, and not on Native American "ceremonies." (Doc. # 122-1 at 21-63.)

At a minimum, an inmate's grievance must put the prison on notice of the problem. *See Griffin v.  Arpaio*, 557 F.3d 1117, 1120 (9th Cir.  2009).

> A grievance need not contain legal terminology or legal theories unless they are in some way needed to provide notice of the harm being grieved.  A grievance also need not contain every fact necessary to prove each element of an eventual legal claim.  The primary purpose is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation.

*Id*.  Neither of these grievances provided NDOC with notice that Plaintiff was being deprived of participating in various Native American "ceremonies." Coupled with his failure to utilize the procedures set forth in AR 810 and the Religious Practices Manual, the court finds Plaintiff

failed to exhaust his administrative remedies with respect to this claim, and it should be dismissed without prejudice.

### b. Possession of religious property items

### i. Allegations

Plaintiff claims that he must possess certain religious items, including: spiritual packages; prayer blanket; sacred totems; sacred herbs; sacred teachings; sacred music; sacred pipe; sacred prayer stick or medicine staff; sacred drum; sacred flute; sacred rattles; ceremonial hat; sacred headband; medicine bag; chokers; necklaces; claws; stones; crystals; feathers; arm bands; abalone shell (smudge bowl); sacred shields; hides; sinew; needles; seed beads; beading thread; scissors; furs; beads; laces; sacred herb bags; possibles bag; drum stick; and beading needles. (Doc. # 8 at 6-7, 10-11, 13-15.)

### ii. Grievances

In his informal level grievance for grievance number 2006-27-86530, Plaintiff asserts that the following religious items were wrongfully confiscated and not returned: his prayer stick; a smudge bowl (small abalone shell); an herb dish; boxes of seed beads; a bag of golden elk and deer hide; four (4) needles, beading and gloves; six (6) small jars of powder paints; six (6) small jars of crow beads; one (1) large spool of black thread; a miniature sacred pipe stem and regalia with beaded designs; one (1) ceremonial arm band made of blue, white, and green seed beads with leather straps; a ceremonial arm band made of red, blue, black, and white colored seed beads; a roseetee of a native star design made of seed beads; a strap with the word "Native" made of seed beads; a reddish-brown feather with the end wrapped in deer hide; a drawing board with native book cover; native family tree wolf claw; native religious designs on beadgraph paper and colored pencils; a small bottle of glue; a red and black native head band; a small circle of jean material; two (2) tan envelopes; one (1) native hair tie made from horn and crow beads and golden elk. (Doc. # 122-1 at 21-51.)

Defendants argue that this grievance is unrelated to Plaintiff's allegations that prison regulations prevent him from possessing necessary religious property. (Doc. # 104 at 13.) The

court disagrees, and finds this is belied by the record. The court finds that this informal level grievance provides Defendants with detailed notice of the problem, *i.e.,* the claimed inability of Plaintiff to possess certain religious property. (Doc. # 122-1 at 21-51.) While Defendants are correct that this grievance relates to a specific incident taking place in August of 2008, it is clear that Plaintiff takes issue with the fact that these items are unauthorized and he is not allowed to possess them as religious property. Accordingly, the court finds Plaintiff sufficiently complied with NDOC's grievance process with respect to this claim.

### iii.  AR 810

Next, Defendants argue this claim should be dismissed because Plaintiff failed to fill out a Request for Accommodation of Religious Practices Form. (Doc. # 104 at 12.)

Defendants have filed a NDOC Religious Property Request Form, dated August 26, 2008, submitted by Plaintiff to the chaplain. (Doc. # 104-5 at 50-51 (Ex. I).) The form appears to request the following items: possibles bag; pipe bag; pipe bowl bag; large sage bag; matches bag; small sage bag; tobacco bag; sweet grass bag; feather bag; pipe; pipe stem; pipe stem cleaner wood; pipe bowl cleaner wood; necklace; spiritual choker; peace shield; shield; rattle; prayer feather; bowl with lid, gourd; spiritual box; altar; spiritual box; herbs; bead box; head band; totem wood; feathers, crow beads, seed beads, colored glass beads, pony beads, hair pipe, silver beads, turquoise beads; hides white and gold; nymo and wax thread; finding silver and stone; paints and brushes; tobacco mixtures; rosettes, beaded; glue; scissors; beading needles, glovers needles, sewing needles; lighter case; beaded spiritual bag; drum handle; tribe of nations shield; mint on string; rocks; small piece of wood; small bone buffalo skull; small herb bag; wing fan; small shield; and herbs (chamomile, cinnamon, mint, lavender). (*Id.*)

The chaplain's response states that Plaintiff is not permitted to have his items brought back by his attorney, but may request to order new items in accordance with AR 810 and the Religious Practices Manual. (*Id.*)

The court is troubled by Defendants' argument. Defendants contend that Plaintiff failed to exhaust his administrative remedies because he did not submit a Request for

14

Accommodation of Religious Practices Form concerning his religious property (Doc. # 104 at 12), but the provision in the NDOC Religious Practices Manual governing requests for religious property states that a request is to be made in writing to the chaplain (Doc. # 104-3 at 16), which it appears Plaintiff accomplished by submitting this form. (Doc. # 104-5 at 50-51 (Ex. I).) Once a request has been submitted, the manual states that the chaplain will meet with the inmate, and *when deemed necessary*, will provide the inmate with a Request for Accommodation of Religious Practice Form. (*Id.*)

Defendants do not address whether the chaplain met with Plaintiff pursuant to the policy outlined in the Religious Practice Manual. Nor do they address whether the chaplain provided Plaintiff with the form in response to his request for religious property. Therefore, from the record before the court, it appears Plaintiff complied with all policies held out to him. As a result, the court finds Defendants have not met their burden of establishing Plaintiff failed to exhaust his administrative remedies with respect to this claim, and the motion to dismiss should be denied in this regard.

### c. Prayer

Plaintiff claims that his ability to pray has been inhibited. (Doc. # 8 at 7, 14, 25.)

To the extent this claim can be construed as a request for new or additional religious services, the declarations of Chaplain Hummel and Ms. McBroom demonstrate that Plaintiff failed to comply with AR 810 and the Religious Practices Manual prior to filing his Complaint. (*See* Doc. # 104-5 at 47-48 (Ex. H), 61-62 (Ex. L).) Moreover, neither grievance number 2006-27-11753 nor grievance number 2006-27-86530 (Doc. # 122-1) put Defendants on notice that Plaintiff was claiming his ability to pray was being infringed. *See Griffin*, 557 F.3d at 1120 ("primary purpose [of the grievance] is to alert the prison to a problem and facilitation its resolution[.]"). Therefore, this claim should be dismissed without prejudice.

### d. Discrimination

Plaintiff asserts he was subject to religious discrimination. (Doc. # 8 at 7.) Plaintiff alleges that Defendants will not allow Plaintiff to wear his sacred headband, but they allow

15

other inmates exercising their religious beliefs, including Muslim and Jewish inmates, to wear and possess religious headgear. (*Id.* at 15.) Plaintiff further alleges that Lieutenant Olivas and Senior Correctional Officer Bauman discriminated against him because of his religion when they destroyed his religious property. (*Id.* at 24.) On screening, the court determined that Plaintiff set forth a colorable claim for violation of the Equal Protection Clause of the Fourteenth Amendment, based on the alleged confiscation and desecration of Plaintiff's religious items. (Doc. # 7 at 6.)

First, the NDOC Religious Practice Manual does not contain a provision governing a claim that an inmate is being subject to religious discrimination. (*See* Doc. # 104-3 at 15.) Therefore, Plaintiff was not required to submit any written request pursuant to AR 810 or the Religious Practice Manual prior to filing his Complaint with respect to this claim.

Second, the court finds that Plaintiff sufficiently put Defendants on notice of his religious discrimination claim in grievance number 2006-27-86530. (Doc. # 122-1 at 21-63.) In his informal level grievance, after describing the confiscation and inventorying of his property, Plaintiff states, "I felt as though I had been attacked from the standpoint of being Mohawk and for my religious beliefs…" (*Id.* at 23; *see also id.* at 26-28, 33-34, 39, 42.)

Thus, the court finds Plaintiff properly exhausted his administrative remedies with respect to this claim and Defendants' motion should be denied in this regard.

### e. Preparation and adequacy of food for ceremonial meals

Plaintiff alleges that AR 810.01.1.3.1 improperly limits religious dietary customs to those items prepared and/or served in the culinary, or those that can be purchased from the canteen, and that his religious practices require him to prepare his sacred meal himself. (Doc. # 8 at 10.)

The declarations of Chaplain Hummel and Ms. McBroom demonstrate that Plaintiff failed to comply with AR 810 with respect to this claim prior to filing his Complaint. (*See* Doc. # 104-5 at 47-48 (Ex. H), 61-62 (Ex. L).) Moreover, neither grievance number 2006-27-11753 nor grievance number 2006-27-86530 put Defendants on notice of a claim about the adequacy of food and ability to prepare sacred meals. (*See* Doc. # 122-1.) Having failed to comply with

1   AR 810, the Religious Practice Manual, and AR 740, Plaintiff's claims related to the preparation
2   and adequacy of food for ceremonial meals should be dismissed without prejudice.

3   **f. Wearing religious headgear**

4   Plaintiff asserts that AR 810.01.1.3.3 prohibits any headgear to be worn by inmates in
5   the culinary, on the yard, or in living units, but Plaintiff's religious customs require him to wear
6   a ceremonial hat or headband. (Doc. # 8 at 10.)

7   To the extent Plaintiff claims he was denied religious property in the form of religious
8   headgear, this claim is addressed above. However, to the extent Plaintiff claims a denial of the
9   ability to wear his religious headgear in the culinary, yard or living units, the court finds
10   Plaintiff failed to exhaust available administrative remedies.

11   First, to the extent this can be construed as a request for new or additional religious
12   services, the declarations of Chaplain Hummel and Ms.  McBroom demonstrate that Plaintiff
13   failed to comply with AR 810 with respect to this claim prior to filing his Complaint. (*See* Doc.
14   # 104-5 at 47-48 (Ex. H), 61-62 (Ex. L).) Second, neither grievance number 2006-27-11753 nor
15   grievance number 2006-2786530 puts Defendants on notice of Plaintiff's alleged inability to
16   wear his religious headgear in the culinary, yard, or living units.  Accordingly, this claim should
17   be dismissed without prejudice.

18   **g.  Burning herbs in an individual setting**

19   Plaintiff claims that R 810.05.1.2.4 allows inmates whose religious expression includes
20   smoke producing substances to burn small amounts of these substances during group worship
21   services only, but it does not authorize the use of these substances by individuals in their cells
22   or other parts of the facility. (Doc. # 8 at 11.) Plaintiff further alleges that Defendants will not
23   allow him to burn small amounts of sage, sweet grass or cedar in his living area or other areas
24   in the facility, while Native American inmates practicing in a group setting may do so.  (*Id.* at
25   13.)

26   Once again, to the extent this can be construed as a request for new or additional
27   religious services, the declarations of Chaplain Hummel and Ms.  McBroom demonstrate that

28   17

Plaintiff failed to comply with AR 810 and the Religious Practice Manual with respect to this claim prior to filing his Complaint. (*See* Doc. # 104-5 at 47-48 (Ex. H), 61-62 (Ex. L).) Likewise, neither of the grievances at issue, numbers 2006-27-11753 and 2006-27-86530 (Doc. # 122-1), put Defendants on notice of this claim. Accordingly, the court recommends dismissing this claim without prejudice.

### h. Use of religious grounds

Plaintiff claims that the use of religious land is subject to Defendants' arbitrary schedule, and he is precluded from using a separate plot of ground for solitary practice of his religion. (Doc. # 8 at 12, 20.)

Plaintiff failed to comply with AR 810 and the Religious Practice Manual prior to filing his Complaint with respect to this claim. (*See* Doc. # 104-5 at 47-48 (Ex. H), 61-62 (Ex. L).) Once again, Plaintiff failed to put Defendants on notice of this claim in either of the grievances at issue. (*See* Doc. # 122-1.) Accordingly, these claims should be dismissed without prejudice.

### i. Ability to order religious books, papers, and music

Plaintiff alleges that Defendants have interfered with his ability to order religious books, papers, and music. (Doc. # 8 at 14.)

A review of the record confirms that Plaintiff not only failed to comply with AR 810 and the Religious Practice Manual with respect to this claim, but he also failed to put Defendants on notice of it in his grievances. (*See* Doc. # 104-5 at 47-48 (Ex. H), 61-62 (Ex. L); Doc. # 122-1.) Therefore, this claim should be dismissed without prejudice.

### j. Conduct of Senior Correctional Officer James Bauman

Plaintiff alleges that Senior Correctional Officer James Bauman destroyed his religious items because of Plaintiff's religion in violation of RLUIPA, the First Amendment, and the Equal Protection Clause of the Fourteenth Amendment. (Doc. # 8 at 5, 32.)

Preliminarily, as set forth above, the NDOC Religious Practice Manual categorizes inmate requests under AR 810 into five (5) categories, none of which govern the claims made with respect to Senior Correctional Officer Bauman. (*See* Doc. # 104 Ex. C at 14.)

Next, Defendants are correct that the only grievance relevant to this claim is grievance number 2006-27-86530. (*See* Doc. # 104 at 19; Doc. # 122-1 at 21-63.) Defendants are also correct that Plaintiff did not mention Senior Correctional Officer Bauman in his informal level grievance or property claim form in connection with this grievance. (*See* Doc. # 104 at 19-20; Doc. # 122-1 at 21-51.) Defendants do concede that Plaintiff mentioned Senior Correctional Officer Bauman in the first level grievance (*see* Doc. # 104 at 21; *see also* Doc. # 122-1 at 54, 56); however, Defendants maintain Plaintiff did not provide sufficient notice of the claim against Senior Correctional Officer Bauman. (Doc. # 104 at 20-21.) Specifically, Defendants argue because Plaintiff did not reference Senior Correctional Officer Bauman in the informal level grievance, and only made passing reference to him in the first level grievance, he did not comply with NDOC grievance procedures which require that he provide all factual information at the informal level. (*See id.* at 19-21.)

The United States Supreme Court has held that "exhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievances." *Jones v. Bock*, 549 U.S. 199, 219 (2007).[12] Rather, to the extent any such requirement may exist, it must come from prison regulations prescribing the grievance process for that prison. *See id*. In ruling this way, the Supreme Court relied on a Fifth Circuit decision, quoting the following language: "We are mindful that the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued; the grievance is not a summons and complaint that initiates adversarial litigation." *Id*. (quoting *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004)).

Keeping in mind that the primary purpose of the grievance is to put the prison on notice of the *problem*, and not to identify each and every individual *defendant* that will later be sued, the court finds that Plaintiff properly grieved this claim. The requirement to exhaust administrative remedies is put in place to afford the prison an opportunity to address the

---

[12] Defendants acknowledge this ruling by the Supreme Court.  (*See* Doc. # 104 at 19.)

inmate complaint internally, and it appears in this case that Plaintiff's grievance allowed the prison to do so. Plaintiff sufficiently put the prison on notice of the problem, and was not required to list every person that would later become a defendant to satisfy NDOC's exhaustion requirements. The court notes that it finds Defendants' argument particularly unconvincing because it is likely the inmate may not have access to records identifying officers on duty during a particular time frame at the time he is filing his grievance. Accordingly, Defendants' motion should be denied with respect to this claim.

## IV. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

As indicated above, Plaintiff titles his response to Defendants' Motion to Dismiss, "Opposition to Defendants' Motion to Dismiss and Motion for Summary Judgment," which was docketed as Plaintiff's Opposition to Defendants' Motion to Dismiss (Doc. # 110) and Plaintiff's Motion for Summary Judgment (Doc. # 111). The court previously stayed the briefing schedule on Plaintiff's Motion for Summary Judgment for thirty (30) days following the District Court's adoption or denial of this Report and Recommendation. (*See* Doc. # 119.) Upon further review of Plaintiff's Motion for Summary Judgment, the court hereby lifts the stay, and recommends denial of Plaintiff's Motion for Summary Judgment (Doc. # 111).

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Fed. R. Civ. P. 56. Summary judgment is only appropriate if the moving party establishes "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Moreover, under Local Rule 56-1, the moving party must cite "*the particular portions of any pleading, affidavit, deposition, interrogatory, answer, admission, or other evidence upon which the party relies.*" LR 56-1 (emphasis added). Plaintiff does not refer to a single shred of evidence to support his motion.

(*See* Doc. # 111.) Instead, he merely states in a conclusory fashion that Defendants have no evidence to prove him wrong. (*Id.* at 5-9.) Having failed to establish there is no genuine dispute as to any material fact, Plaintiff's motion (Doc. # 111) should be denied.

## V. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an Order **DENYING** Plaintiff's Motion for Summary Judgment (Doc. # 111).

**IT IS HEREBY FURTHER RECOMMENDED** that the District Judge enter an Order **GRANTING IN PART AND DENYING IN PART** Defendants' Motion to Dismiss (Doc. # 104) as follows:

Defendants' Motion to Dismiss (Doc. # 104) should be **GRANTED** and the following claims should be **DISMISSED WITHOUT PREJUDICE**:

(1) Plaintiff's claim that he is precluded from participating in numerous Native American ceremonies (Doc. # 8 at 6);

(2) Plaintiff's claim that his ability to pray was inhibited (Doc. # 8 at 7, 14, 25);

(3) Plaintiff's claim regarding the preparation and adequacy of food for ceremonial meals (Doc. # 8 at 10-11, 13-14);

(4) Plaintiff's claim that he was denied the ability to wear religious headgear in the culinary, yard, or living units (Doc. # 8 at 10);

(5) Plaintiff's claim that he was denied the ability to burn herbs in his living area (Doc. # 8 at 11, 13);

(6) Plaintiff's claims that the use of religious land is subject to Defendants' arbitrary schedule, and that he is precluded from using a separate plot of ground for solitary practice of his religion (Doc. # 8 at 12, 20); and

(7) Plaintiff's claim that Defendants interfered with his ability to order religious books, papers, and music (Doc. # 8 at 14).

Defendants' Motion to Dismiss (Doc. # 104) should be **DENIED** with respect to the following:

21

1       (1) Plaintiff's claim that he was precluded from possessing certain religious items (Doc.

2 # 8 at 6-7, 10-11, 13-15, 26);

3       (2) Plaintiff's claim that he was discriminated against based on his religion (Doc. # 8 at

4 7, 15, 24, 32); and

5       (3) Plaintiff's claims concerning the conduct of Senior Correctional Officer James

6 Bauman (Doc. # 8 at 5, 24, 32).

7       The parties should be aware of the following:

8       1.     That they may file, pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the

9 Local Rules of Practice, specific written objections to this Report and Recommendation within

10 fourteen (14) days of receipt. These objections should be titled "Objections to Magistrate

11 Judge's Report and Recommendation" and should be accompanied by points and authorities

12 for consideration by the District Court.

13       2.     That this Report and Recommendation is not an appealable order and that any

14 notice of appeal pursuant to Rule 4(a)(1), Fed. R. App. P., should not be filed until entry of the

15 District Court's judgment.

16       DATED: November 30, 2011.

17

18

19                           _____

20                           UNITED STATES MAGISTRATE JUDGE

21

22

23

24

25

26

27

28